CABANA HOMES, INC. *v.* LOUIE COWARD ET UX

5-5648                                              472 S.W. 2d 709

Opinion delivered November 15, 1971

*J. W. Durden,* or appellant.

*Gean, Gean & Gean,* for appellees.

LYLE BROWN, Justice. Appellees Louie Coward and wife, recovered judgment for the down payment and first installment payment on a mobile home purchased from appellant, Cabana Homes, Inc. The suit was based on an implied warranty of fitness for occupancy which appellees contended was breached. Appellant contends that the trial court, sitting as a jury, made a finding of breach of warranty which was not supported by substantial evidence. Appellant also contends that the record indisputably shows that appellant made necessary repairs within a reasonable time.

The parties closed the deal for the mobile home at appellant's lot in Fort Smith on September 9, 1969, and two days thereafter appellant delivered the trailer to appellees at Barling, Arkansas, some nine miles from Fort Smith. According to Mrs. Coward a leakage problem occurred with the first rain about two weeks after they moved in the quarters; that those leaks were in the hall and front bedroom; and that Cabana responded to a call and fixed the leaks. She related that around the first of October it rained again and a leak developed around the

kitchen window; and that ten days later there came a heavy rain and leaks occurred in every room. She said the paneling came loose and buckled and that the ceiling dropped down at one of the doors. After that experience she said appellant came out and worked on the roof; that the following day there came another hard rain; that again appellant sent a repairman who attempted to stop the leaks; and that the same experience occurred on October 30. She said the efforts to stop the leaks again failed and she notified appellant by letter that appellees were vacating the property and requested a return of their down payment and one monthly installment paid. Appellees vacated on November 2 and Mrs. Coward said the trailer was leaking on that date.

Appellee Louie Coward corroborated much of the testimony of his wife. "We had trouble on six occasions from the time we bought it until the time we vacated it. It was a big amount of rain damage every time it rained. It rained the day we left and it was still leaking. Every ceiling was stained, every carpet was stained, the baseboards were cracked open, the wall was buckling and the ceiling was stained and buckled in several places."

Appellant presented the testimony of Jim Rogers, who is in the business of repairing mobile homes. At the direction of Cabana, Rogers did repairs to the mobile home on the six occasions about which Mrs. Coward testified. He detailed the extensive repairs his man made in order to stop leaks. He testified that it is not uncommon for mobile homes to have leaks. "Road sway" in moving trailers is the most common cause of seams breaking loose. He conceded that the number of repairs necessary on appellees' home was unusually high.

Max Young, a sales manager for Cabana, testified that mobile homes are not perfect and some problems are to be anticipated. He said appellant took possession of the trailer after appellees moved out and it was returned to Cabana's lot. He insisted that they did not find any further leaks; that the trailer was resold and moved to Oklahoma; and that the new owners have made no complaints.

Al Cox, the salesman who sold the home to the Cowards, testified that he went to the home with Mr. Rogers after the Cowards moved out; that it had rained the night before and was misting rain at the time; and that they saw no signs of leakage.

If the testimony of the Cowards is to be believed it is unquestionable that they put up with the leakage until their patience was exhausted, and that when they vacated the trailer it was still leaking. If the testimony introduced by appellant is to be accepted at face value then we would have to say that the leaks were stopped after some six service calls. Of course the testimony is at opposite poles and it was the responsibility of the court, sitting as a jury, to determine the weight of the evidence. The trial court was more impressed by the testimony of Mrs. Coward, as stated in its findings. Her testimony was substantial and in that situation we are not permitted to disturb the court's conclusion as to the facts.

Affirmed.